**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ERICA RENA NAPIER,                         Case No. 1:13-cv-644

       Plaintiff,                                   Dlott, J.
                                                         Bowman, M.J.
      v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Erica Rena Napier filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for both child's insurance benefits and for Supplemental Security Income ("SSI") in September 2010, alleging disability beginning on January 29, 2001,[1] due to a combination of mental and physical impairments. After Plaintiff's applications were denied initially and upon reconsideration, she requested a hearing *de*

---

[1]The definition of "child" for purposes of benefits can be complicated, but usually requires that the claimant be unmarried and below specified age limits (18 or 19), with a disability that began before the age of 22. *See generally* 42 U.S.C. §1382(c)(3); 42 U.S.C. §416(e). Plaintiff was over the age of 20 on her alleged disability onset date of January 29, 2001. It is unclear from the record whether she was married. In any event, she appears to challenge only the adverse *adult* SSI determination in this Court.

1

*novo* before an Administrative Law Judge ("ALJ"). At a hearing held in March 2012, ALJ Peter J. Boylan heard testimony from Plaintiff and from a vocational expert. On April 4, 2012, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled. (Tr. 78-94). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Defendant's final determination.

Plaintiff was 31 years old at the time of the ALJ's decision, with a limited education, having dropped out of school at some point during the ninth grade.[2] (Tr. 23). She previously worked as a stocking clerk and as a cashier at Speedway, which the ALJ considered to be past relevant work to the extent that it was performed "*near* the substantial gainful activity level, and lasted long enough for the claimant to learn to do these jobs." (Tr. 92, emphasis added). However, she performed the work for less than a year, with her highest recorded annual earnings totaling $5500 (Tr. 302, 530), and she has not engaged in any substantial gainful activity since her alleged disability date.

Based upon the record and testimony, the ALJ found that Plaintiff has the severe impairments of: "osteoarthritis right wrist, degenerative joint disease of knees bilaterally with right knee worse than left knee, degenerative disc disease of neck and lumbar spine, asthma, hypertension, obesity, depression, anxiety, and borderline intellectual functioning." (Tr. 80). These impairments did not alone, or in combination with any other impairments, meet or medically equal one of the listed impairments in 20 CFR

---

[2]School records reflect that Plaintiff failed the ninth grade during the 2005-2006 school year – the third occasion that she was required to repeat a grade. (Tr. 510). Shortly after beginning ninth grade again in September 2006, she permanently withdrew from school, at the age of 16. (Tr. 428).

2

Part 404, Subpart P, Appendix 1. (Tr. 80-81). Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> less than the full range of sedentary work. Specifically, the claimant is limited to occasional pushing or pulling (including operation of foot controls) in both lower extremities. She can occasionally climb stairs and ramps. The claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and unprotected heights. The claimant is limited to simple, routine, and repetitive tasks with no fast pace work or high production quotas. Further, she is limited to simple work-related decisions and frequent interaction with supervisors, co-workers, and the public. Her work must have few, if any, changes in a routine work setting.

(Tr. 84). The ALJ concluded that, while Plaintiff could not perform her past relevant work, she could still perform "jobs that exist in significant numbers in the national economy," including, as testified to by the vocational expert, the sedentary jobs of dial marker, addresser, cutter/paster, and assembler (Tr. 93). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and is not entitled to benefits. (Tr. 94).

On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to find that she met or equaled Listing 12.05 for mental retardation; and (2) by failing to adequately define Plaintiff's physical RFC; (3) by failing to include cognitive limitations in the RFC; and (4) by failing to find Plaintiff fully credible. Although Plaintiff seeks reversal for benefits, the undersigned concludes that this case should be remanded for further development of the record.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

4

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §416.920. However, a plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability or supplemental security benefits. *See* 20 C.F.R. § 404.1512(a).

**B. Plaintiff's Assertions of Error**

**1. Listing 12.05C**

Plaintiff asserts that the ALJ failed to provide sufficient reasons for his determination that she did not meet or equal Listing 12.05C, for mild mental retardation. I agree.

The Listing for mental retardation, contained in 20 C.F.R. Part 404, Subpart P, Appendix 1, states:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports an onset of the impairment before age

5

>22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>...C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Id*.

In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit clarified that in addition to a qualifying IQ score, a claimant is required to satisfy the "adaptive functioning" standard in order to meet Listing 12.05C. In *Foster*, the plaintiff had dropped out of school after the ninth grade and had qualifying IQ scores measured when she was 42 years old, but was held still not to satisfy Listing 12.05 because there was no evidence of deficits in adaptive functioning before age 22, and because her long-standing work record as an accounting clerk at a bank and as a liquor store clerk demonstrated an "ability to perform relatively complicated tasks." *Id*. at 355. Both in *Foster* and in subsequent cases, the Sixth Circuit has held that in order to meet Listing 12.05, a plaintiff must show: "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations," in addition to the criteria under A, B, C, or D of Section 12.05. *Hayes v. Com'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir. 2009). "Adaptive functioning" involves an individual's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993), citing *Diagnostic and Statistical Manual of Mental Disorders*, pp. 28–29 (3d rev. ed.1987).

In this case, unlike *Foster*, Plaintiff does not have a proven track record of being able to work full-time performing "relatively complicated tasks." Also unlike *Foster*

6

where the record was silent as to any deficits during that plaintiff's school history and it was unclear "why Foster did not continue her studies" after the ninth grade, Plaintiff's records reflect that she was in learning disabled or developmentally handicapped classes throughout her school years, with significant, well-documented, and persistent deficits in multiple academic and social areas. Despite being placed in special education classes, she was required to repeat the first, third, and ninth grades before she permanently withdrew at the beginning of her second attempt at completing the ninth grade.

The ALJ found with minimal analysis that Plaintiff possesses "borderline" intellectual functioning and therefore does not meet or equal the Listing. He summarily dismissed Plaintiff's argument that she met Listing 12.05 based upon his determination that "the claimant functions at the borderline intellectual level and *she does not have an IQ that medically equals the criteria of Listing 12.05*." (Tr. 83, emphasis added). In contrast to that statement, however, in his discussion of the medical evidence the ALJ specifically referenced IQ testing performed (at age 27) that reflected both verbal and full scale IQ scores of 62, "placing her in the 1st percentile of the general population." (Tr. 89). Those scores easily equal Listing 12.05C, which requires only a single IQ score within the 60-70 range. Plaintiff's other limitations also would qualify her under the Listing, insofar as she is limited to less than a full range of sedentary work due to numerous severe physical limitations.

On the other hand, the evidence of mental retardation is not unequivocal. School records include references to IQ scores assessed at the age of 9 and again at the age of 12. On those test dates, Plaintiff achieved verbal IQ scores of 74 and 72, and full

7

scale scores of 82 and 75 on the WISC III, both of which sets of scores exceed Listing 12.05 criteria. (Tr. 406-407, 455, 483).

In the Commissioner's response, Defendant primarily relies upon cases in which the Commissioner's decision has been affirmed despite qualifying IQ scores, based upon a demonstrated higher level of adaptive functioning. *See, e.g., Daniels v. Com'r of Soc. Sec.*, 70 Fed. Appx. 868, 872 (6th Cir. 2003). However, remand is required here because, instead of discussing the contrasting sets of IQ scores and/or which scores more validly represented Plaintiff's IQ, the ALJ merely parroted the finding of an examining psychologist that Plaintiff's "[a]daptive functioning *suggested* borderline range of ability." (Tr. 89, emphasis added).[3] But the examining psychologist's report fails to explain the basis for his finding, or for his conclusion that despite "valid" IQ scores in the "retarded" range, Plaintiff functions within the higher "borderline" range.

Other than the single reference to Dr. Chiappone's report, the ALJ includes no explanation of why he believed that Plaintiff did not meet or equal Listing 12.05. While the ALJ references other non-examining medical opinions, those reviewers appear to have simply adopted Dr. Chiappone's conclusion that Plaintiff appears to be within the "borderline" range of intellectual functioning.

In response to this appeal, Defendant points to the opinion of a second examining consultant, Dr. Meyers, as supporting the ALJ's finding of "borderline" intellectual functioning. However, Dr. Meyers performed no IQ testing. She assessed

---

[3]Notwithstanding the higher IQ scores during childhood, school records provide ample evidence of deficits in adaptive functioning. (See, e.g., Tr. 403-406, "developmentally handicapped" with "overall deficits in adaptive behavior in at least two areas"; Tr. 409, "adaptive behavior skills…are low relative to other children"); Tr. 411, 413-416 (reflecting "significant" deficits); Tr. 441, "speech handicapped"; Tr. 455, "significant" deficits).

8

Plaintiff as giving an "[o]verall…impression" of cognitive functioning within the borderline range, despite noting that she dropped out of LD classes after the eighth grade, and could not accurately relate the number of weeks in a year, the name of the current President, or the capital of Ohio. (Tr. 1000). Dr. Meyer's assessment (and the ALJ's discussion thereof) focused primarily on Plaintiff's symptom severity for her depression, concluding that the assessed GAF score of 51 indicated "moderate" symptoms that accurately reflected Plaintiff's functioning. (Tr. 90).

Defendant additionally argues that Plaintiff's own testimony about her activities of daily living supports a failure to show deficits in adaptive functioning. However, the undersigned cannot find the existence of substantial evidence on the record presented. The ALJ simply failed to include any real discussion of adaptive functioning, notwithstanding a brief discussion of Plaintiff's activities of daily living. *See generally Brown v. Sec'y of HHS*, 948 F.2d 268 (6th Cir. 1991)(explaining that activities of daily living similar to those in which Plaintiff engages are not necessarily "inconsistent" with a finding that a plaintiff has the requisite deficits in adaptive functioning required to meet listing for mild mental retardation); *but contrast Bailey v. Com'r of Soc. Sec.*, 2013 WL 2286962 at *6 (establishing that where evidence exists that a plaintiff has been able to live independently and maintain full-time employment for many years, an ALJ's decision that a plaintiff does not meet Listing 12.05, collecting cases); *West v. Com'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir.2007) (same).

In sum, viewing the record as a whole, the undersigned cannot find substantial evidence to support the ALJ's cursory determination that Plaintiff does not meet or equal Listing 12.05C. *See also McClellan v. Astrue*, 604 F. Supp.2d 678 (E.D. Tenn.

2011)(remanding for further consideration on similar facts); *see also Dragon v. Com'r of Soc. Sec.*, 470 Fed. Appx. 454, 2012 WL 987758 (6th Cir. March 26, 2012)(reversing for award of benefits under Listing 12.05 where ALJ improperly ignored and invalidated qualifying IQ scores despite "significant" evidence of deficits in adaptive functioning); *contrast Bailey v. Com'r of Soc. Sec.*, Case No. 1:12-cv-140, 2013 WL 2286962 (May 23, 2013)(Spiegel, J., holding that ALJ properly evaluated conflicting evidence concerning Plaintiff's IQ scores, with several scores supporting a finding of borderline intellectual functioning despite additional scores below 70, including one score of 59).

### 2. Treating Physician's Opinions

In her second assertion of error, Plaintiff contends that the ALJ improperly evaluated opinion evidence from her treating orthopedic surgeon, Dr. Ahmed. Dr. Ahmed began treating Plaintiff in January 2010, performed arthroscopic surgery on Plaintiff's right knee in May of 2010, and continued treating Plaintiff through the date of the evidentiary hearing. Records reflect that Plaintiff's knee pain increased after a motor vehicle accident in January 2011. (Tr. 87). On May 31, 2011, Dr. Ahmed completed a form in which he offered opinions concerning Plaintiff's physical limitations. Dr. Ahmed severely restricted Plaintiff in virtually all physical activities, finding she could sit for not more than sixty minutes at a time, and that she could only stand or walk around for five minutes, with less than two hours of standing and walking in a workday and about two hours of sitting. Such restrictions would have precluded all work.[4]

---

[4] Plaintiff argues that she is unable to bend or stoop, citing SSR 96-9p. Although Plaintiff testified that she avoids bending because it is "hard" for her, she did not testify that she is wholly precluded from bending. (Tr. 127). Dr. Ahmed opined that she could occasionally stoop, and Dr. Fritzhand found she could bend a moderate amount. Contrary to Plaintiff's argument, SSR 96-9p does not mandate a disability finding based upon the referenced postural limitation. *See Campbell v. Com'r of Soc. Sec.*, 2009 WL 2777718

Plaintiff argues that the ALJ improperly rejected Dr. Ahmed's opinions concerning Plaintiff's physical limitations, and failed to provide "good reasons" for doing so. The undersigned disagrees, and finds that the ALJ adequately explained his decision to accord "little weight" to Dr. Ahmed. The ALJ pointed out that the physician's "only support for this less than sedentary residual functional capacity is the claimant's knee condition," which was inconsistent with restrictions on her ability to reach, push/pull, and a host of environmental restrictions. (Tr. 87). The ALJ also noted evidence that Plaintiff's right knee had shown improvement after a total knee replacement in September 2011. (*Id.*). Viewing the record as a whole, I conclude that the ALJ satisfied the "good reasons" standard for giving "little" weight to Dr. Ahmed's extreme opinions.

### 3. Cognitive Limitations and the Vocational Expert Testimony

The vocational expert testified, and the ALJ determined based upon his assessment of Plaintiff's RFC and Plaintiff's age, education and work experience, that Plaintiff could perform four different positions. Plaintiff argues that this was reversible error even if this Court were to otherwise affirm the ALJ's opinion that Plaintiff does not meet or equal Listing 12.05C, because virtually all of the positions to which the VE testified would require a higher level of literacy and/or math skills than Plaintiff possesses. The record reflects that although Plaintiff completed the eighth grade of school, she remained in special education classes throughout her school years. She was never able to complete her GED. (Tr. 82).

---

(E.D. Mich. Aug. 27, 2009); *Kyle v. Com'r of Soc. Sec.*, 2009 WL 890516 (S.D. Ohio, March 30, 2009).

11

Central to Plaintiff's argument that she lacked the cognitive abilities that would be commensurate with an eighth grade reading and math level are Dr. Chiappone's cognitive test results. Those results show that Plaintiff's "word reading, sentence comprehension, spelling" and reading composite to be well below the one percentile, with math skills at the 1.7 grade level. (Tr. 658, 694). The ALJ relied on Dr. Chiappone's opinion that despite those low performance scores, Plaintiff functions in the borderline intellectual range.

The undersigned agrees that substantial evidence does not support the ALJ's conclusion that Plaintiff could perform all four positions, based upon the record as currently presented. The ALJ failed to explain why he did not include additional cognitive limitations as documented by Dr. Chiappone, on whose report he otherwise relied. On remand, if the ALJ concludes based upon additional analysis that Plaintiff still does not meet or equal Listing 12.05C, he should reconsider whether additional cognitive mental limitations should be included in her RFC.

**4. Credibility**

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions

among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

The ALJ found "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible." (Tr. 86). The ALJ noted medical records that he believed showed that her physical impairments are "not as limiting as she alleges," and found that her daily activities, such as shopping with the assistance of her 11-year-old son, folding laundry and washing dishes, and keeping up with most (but not all) personal hygiene needs, were "consistent with the ability to perform work." (Tr. 86). While it is proper to consider evidence of a claimant's daily activities when assessing credibility, the evidence of Plaintiff's daily activities in this case provides – at best – only the most modest support for the ALJ's adverse credibility finding. In view of the other errors noted which presumably impacted the ALJ's analysis, the ALJ should reassess Plaintiff's credibility on remand.

### III. Conclusion and Recommendation

Under sentence four, this Court may reverse and direct an immediate award of benefits, or simply direct the Commissioner to reconsider the evidence to correct factual and/or legal error. For the reasons explained above, remand rather than reversal for benefits is appropriate in this case. *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)(restricting the immediate award of benefits to "only" those cases in which "all essential factual issues have been resolved.")

Accordingly, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** because it is not supported by substantial

14

evidence in the record as a whole.  On remand, the ALJ should further develop the record to address and correct the errors identified herein.

                                     <u>*/s Stephanie K. Bowman*</u>
                                       Stephanie K. Bowman
                                       United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| ERICA RENA NAPIER, | Case No. 1:13-cv-644 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).